The fifth case today, Tolliver v. City of Chicago. Good afternoon, your honors. May it please the court. My name is Vassilios Futris, and I represent Mr. Tolliver in this case. December 9, 2009, six years and two days ago, two Chicago police officers shot at Darnell Tolliver 14 times, hitting him seven times. Luckily, he survived. He ultimately pled guilty to aggravated battery and transporting cocaine. This lawsuit stems from his belief that being shot seven times is excessive. Mr. Tolliver admits that his vehicle drove directly, I'm sorry, drove towards Officer Sobrei. There's a dispute with respect to whether the car drove directly towards Officer Sobrei, when the car started driving towards Officer Sobrei, and how fast the car was driving towards Officer Sobrei. Mr. Futris, in his response to the defendant's statement of fact, paragraph 32, Mr. Tolliver asserted that he did not intentionally put the car into drive, that it was knocked into drive when he fell over after being shot. Now, it seems, he claims he, quote, ducked, a voluntary act. How is voluntarily ducking consistent with his statement that he did not intentionally put the car into drive? In other words, he seems to want it both ways. I suppose it's a matter of semantics. What happened, and what was before the district court as well, was that he ducked. When he ducked, he ducked to the right. When he ducked to the right, he got stuck between the gear shift and the dash. And when that happened is when the car got put into gear. So it's not necessarily having it both ways. It's he didn't actually take his hand and put it into drive. But what that happened is when he ducked, he obviously must have hit the gear shift putting into drive. So there's no question that it's always been the case here, and the facts have always been before the court, that he voluntarily ducked. And that's something that I provided to the court. I provided the specific portion of the deposition transcript in which he provided that. And there is, I concede, a portion in which he says he was paralyzed. He felt he was paralyzed. You need a knowing and intentional act. That's right. That you know or intend will cause injury, right? That there's a substantial likelihood that what you're doing is going to cause a particular consequence, yes. What you're describing is reflexive and an accident. I don't agree with that. I think it's comparative to Peepover's Cameron, which was an Illinois case. That was a case where there was a police officer who had pulled somebody over. The person got out of the car. He went into the car ostensibly to turn it off. The trooper was standing next to the passenger side door. Instead of turning the car off, the criminal defendant drove off, and the passenger side door hit the state trooper. In that particular case, the criminal defendant was saying, you know, there's no proof that I intended to hit this state trooper, so there's no aggravated battery. Because all I did was try to drive off, and it wasn't an intentional hitting of the self. So you're trying to compare your client's alleged response to being hit by the first shot to somebody deliberately leaving the scene? He did deliberately duck, yes. He deliberately moved, Your Honor. What the district court was saying is that Mr. Tolliver never had any kind of control over his body to do anything once he was shot, and that's not, in fact, what the facts are in this case. The fact is that he was shot, if you take the facts in his favor, at least twice while the car was stationary, so at least with respect to that portion. I mean, that's not heck barred. That has nothing to do with the validity of the conviction to begin with. So if anything, there's a dispute as to what happens then after he's shot the first two times. He was sitting there stationary for 30 seconds. So now is the next portion heck barred? Well, my position is when he ducks, it's similar to, it's analogous to like a felony murder type of situation where you're committing a particular act and you don't necessarily intend a particular consequence, somebody dying. But a felony murder doesn't apply to an accident. No, I'm not saying this is an accident. It's not an accident when you have one continuous set of motions. You do something which causes an injury to the police officer, and he should have known that when there's a police officer somewhere in front of him that the car is moving forward and he knows it, and he doesn't do anything at that point to try to stop it from going forward. He just basically continues to duck for cover. Could I ask you a question, counsel? You said you think you've got a claim that's not heck barred for at least the first two shots? I think it's for all of them, but I don't think there's any. Let's focus on, okay. I had been thinking that only applied to the first shot. What was the testimony? Was it that there were two shots while it was stationary? Well, if you look at it, Your Honor, and I pointed it out in my reply brief is you have three shots that he actually specifically remembers because he was shot all different parts of his body. He specifically remembers one part of his leg, his shoulder, and his chest. And from those three, the only one that he actually remembers that he was shot from when the car was moving was the one to his leg. So the obvious inference is those first two shots, which are to the upper body, was when he was sitting stationary. And it makes sense, too, because he was sitting up in front of a car when he was shot. So he was shot in the shoulder blade and the chest. That would have been when he's sitting up. And there's just a continuous, after that, Your Honor, it's not the district court was incorrect, and the defendants are incorrect in the characterization of the facts that he lost all control and he was paralyzed. It's not what he says. If you look at the deposition transcript, and there was actually a point in which the defense attorney at the deposition asked me for stipulation regarding what part of his body was paralyzed. And it was the left side of the body that was paralyzed. The right side was underneath him. And so he felt he couldn't move because the left side is paralyzed, he's laying on his right side, the car is moving forward. So the district court was incorrect in stating that he had no control of his body to begin with. You have to analyze this from the facts of he did have control of his body, and he made an affirmative act to do something. And it's not accidental when there's a police officer standing in front of you, and now the car is going in the general direction of that police officer. I think you have to assume, and you have to know that a consequence of that is you can cause harm to the police officer, which is what happened here. He basically moved out of the way and twisted his ankle. And it's – if you take those facts like that, then it's not HEPFAR. It's not – and I said it a number of cases. It's not inconsistent with his aggregate to battery conviction to say that he used too much force in shooting him a total of seven times. Your Honor, I'd like to reserve the remaining portion for rebuttal. All right. Thank you. Mr. Henry. May it please the court, Mr. Tolliver's conviction for aggravated battery of a peace officer established that he caused bodily harm to Officer Sobaraj by means of a voluntary act and also either intentionally or knowingly. But as we explained in our brief, the version of the facts that Mr. Tolliver presented during discovery is incompatible with the facts established by that conviction. For this reason, his excessive force claim is HEPFAR'd as to all of the shots. In his reply brief, Mr. Tolliver attempts to back away from the version of the facts he presented during discovery, but that, of course, is impermissible. First, we explained in our brief that during discovery, Mr. Tolliver testified that he did not intentionally put the car in drive, that it was not into drive, when upon being shot in the chest, he fell to the right, where he became stuck between the gearshift and the middle panel of the car. Mr. Tolliver also testified that as a result of the shot to his chest, he thought he was paralyzed because he, quote, could not move anything except his eyeballs. Those assertions are inconsistent with the conclusion that he voluntarily caused the car to start moving forward or that he voluntarily refrained from stopping the car after it began moving forward. Counsel, how does HECFAR a claim under the plaintiff's version in which he is shot once or twice before the car starts moving? Would you agree that an unprovoked shot would be excessive, right? That's right. At some point during the entire transaction, in order for him to state a claim that's consistent with his conviction, he would have to have the requisite voluntariness. So if throughout the entire transaction he never has that voluntariness, then the entire claim is HECFAR as to all of the shots. Okay. That seems to say that we have to accept plaintiffs, all of plaintiffs' testimony, right? Or we can't pick and choose? Or a jury couldn't pick and choose? Maybe he doesn't have to answer the question, what was the voluntary act, but we've got his testimony that he's sitting there in the car and the officer fires before the car is moving, right? That's his testimony. Right. And that describes excessive force, right? Well, except that if you follow the point is that his statement, that he was shot before the car started moving forward, and that he would have to have never developed, for that to be true, for that to be true and accepted as true, he would have to have never developed the ability to have the voluntariness necessary to have been convicted through the crime. The point is that he almost, consistent with HEC, he almost certainly was not shot before the car started moving forward. And we addressed that in our brief about how HEC operates with the normal rules, with the normal rules here. But what I would want to point out here is that your question about picking and choosing his testimony, his testimony is entirely, during this case is entirely consistent within itself. It's just not consistent with the facts that had to have been true for him to have been convicted of aggravated battery of a police officer. In his reply brief, he emphasizes that during discovery, he also stated that when the bullet struck him, he ducked down to the right, and he characterizes ducking as something voluntary. But that does not avoid the HEC bar. At best, it means that he ducked down before he fell over. He testified that he fell over. So at best, it means he ducked down before he fell over. And by his own testimony, his falling over is both when the car was knocked into drive and when he was no longer physically able to act with volition. In his reply brief, Mr. Culver also emphasizes that he testified at his deposition that he couldn't move this side, and he gestured to the left side of his body. He now contends that this statement does not establish, this is what he says in his brief, in his reply brief, that this statement does not establish that he was completely paralyzed after he was shot. That's true. But neither does that statement establish that he was not completely paralyzed. And significantly, he ignores the separate statement he made during his deposition that as a result of the shot to his chest, he, quote, could not move anything except his eyeballs. That statement does establish that he was completely immobile. And indeed, he also testified that he, quote, thought he was paralyzed. Moreover, he testified further that he was stuck between the gear shift and the middle panel of the car. And his being stuck in that fashion also means that he was physically unable to stop the car from moving forward towards Officer Subbaraj and physically unable to steer it in a manner that would prevent it from striking the officer. Finally, Mr. Tulliver asserts in his reply brief that when the car was knocked into drive and began moving forward towards Officer Subbaraj, he allowed the car to continue heading forward towards the officer. This is what he says in his reply brief. But he makes clear that this assertion rests entirely on his contentions concerning ducking down and paralysis. And as I've just explained, those contentions do not accurately reflect the record. In short, the version of the facts Mr. Tulliver presented during discovery is incompatible with the conclusion established by his conviction that he injured Officer Subbaraj by means of a voluntary act. Accordingly, heck bars his excessive force claim. In alternative, Officer Subbaraj and DuBose were entitled to summary judgment based on qualified immunity for the reasonable use of force against Mr. Tulliver after his car began moving towards Officer Subbaraj. You'd agree that qualified immunity would not apply to the first shot or two. That is correct. In his reply brief, Mr. Tulliver contends that the officers were not entitled to qualified immunity because he asserts, quote, they created the situation that resulted in the car heading in Officer Subbaraj's direction. He cites the state of Starks v. Enyard, but that case does not help him. There, three police officers fired shots at Starks when one of the officers was in danger of being struck by the vehicle Starks was driving. This court held that the officers were not entitled to qualified immunity if the officer in danger created his peril by jumping in front of the vehicle too late for Starks to avoid striking him with the vehicle. But the court added that if Starks, quote, voluntarily drove the car at the officer, that all of the officers would be entitled to qualified immunity for the force they used against Starks in an effort to stop him while the officer was in peril. On this point, Mr. Tulliver's contention in his reply brief that he allowed the car to continue heading in Officer Subbaraj's direction invokes the express limitation in Starks where a driver voluntarily drives a car at an officer. That contention by Mr. Tulliver is a judicial admission and means that Officers Subbaraj and DuBose were entitled to summary judgment based on qualified immunity for the reasonable use of force against Mr. Tulliver when his car was moving towards Officer Subbaraj. And this is true even though the same statement cannot be credited for purposes of avoiding fact because it is not supported by the record. Finally, in our brief, we explained the records, the courts' conclusion that the ---- I'd like to stop you for a moment. May I stop you for a moment? Sure. Because I'm trying to figure this out. On the qualified immunity issue, are you contending that the officers had qualified immunity to shoot at Tulliver even though under his version of the facts they created the danger to themselves when they initially shot him without provocation? Remember, he says that he was shot in the chest and that somehow after he was shot This is what he says in his brief in this court. No, I know. But if we accept his version of the facts, they shot him, he fell over, struck the gear shift, that puts the car in forward motion. Can an officer create a danger and then respond with deadly force? No, they can't. And he would be correct if that's all that he said. But remember, in his reply brief, he also said that he allowed the car to continue moving forward after it began moving forward. Meaning that he's now asserting in his reply brief that he had volition and he actually stopped, didn't prevent the car from moving toward the officer. That is an act where he had a choice not to stop the car after the car started moving forward. He chose not to. If he's paralyzed, how can he stop the car? Well, the confusing part of this case is that he is taking all kinds of different positions. If under his position that he expressed under the version of the facts he expressed during discovery, he was paralyzed from the beginning and he had no volition at all. And that's why his claim is heck barred in its entirety. And that's why we present the qualified immunity defense as an alternative under the qualified immunity defense. All the shots that were fired after the first one, the officers are entitled to qualified immunity as to them. Because as to them, Officer Soberage was in danger. He didn't know, and he and Officer DeBose had no idea that Mr. Tolliver was paralyzed. So they shot at him to try to prevent him from striking Officer Soberage with the car. Now, Mr. Tolliver comes back in his reply brief and says, oh no, oh no. I really had volition. I could have stopped the car after it started going forward. Well, that's inconsistent with the position in discovery. And so he can't take that position for purposes of the heck claim. But it's at the same time a judicial admission for purposes of the qualified immunity claim. And it defeats his qualified immunity claim. Because obviously, even if the officers started the situation by shooting him before the car started moving, and that made the car start moving, if he then gained volition and didn't stop the car, then obviously he, the officers, had every right to shoot him. Thank you, Mr. Henry. You have two minutes, Counsel. Thank you, Your Honor. A handful of points. First of all, Mr. Tolliver is not the one that's had all kinds of different positions in this case with respect to the shooting. We can't lose sight of the fact that in this specific case, the Chicago police detective that investigated this specifically found that the police officer's version of events was impossible forensically. It just simply could not have happened the way they said it happened. They kept changing, Soberai kept changing where he was, whether he was standing, whether he was in front of the car, moving from the car. DeBose and Soberai both said that Soberai was hit by the car. All of that is false. Their entire version is a fabrication. Tolliver's version has always been consistent. And with respect to whether this is intentional or not, this court in Garcia Meza v. MacCasey, which I cited, that was a situation in which there was a hypothetical posed by an aggravated back. And that was a case where this court said, well, if an individual is angry at giving a parking ticket, might propel up the ticket and throw it on the ground and face charges of aggravated battery if that ticket ends up hitting the police officer on the foot. So we're talking about there's no intent there. There's no knowledge that foresight that may be throwing this ticket might accidentally touch a police officer. There's this question doesn't turn on anything other than does the excessive force claim impugning the conviction, the aggravated battery conviction. And by saying that too much force was used when you shot me five times when the car is moving forward towards you slowly in your direction and two times while I'm just sitting there, neither of that implicates that all the aggravated battery conviction, which is did I put in a series of events? Did I do something to cause an injury to this police officer? And you can certainly have one case say it was too much force to shoot at him before the battery occurred. And it's also too much force while the battery occurred. And another one saying that there was a battery. He's not saying that he didn't drive towards the police officer. He's never said that he didn't do anything to try to, you know, to try to hurt this police officer. He's always said the police officer was hurt by my actions. And the excessive force claims and the conspiracy claims do not impugn that. And for that reason, I would ask that this case be heard by a jury. Thank you, counsel. Case will be taken under advisement.